IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. _____

Russ Smith,
Plaintiff,
v.
Archimede Solutions Société à Responsabilité Limitée (SARL),
Defendant

**COMPLAINT**

**TABLE OF CONTENTS**

THE PARTIES- 1
THE DISPUTE - 1
JURISDICTION AND VENUE – 2
RELATED LITIGATION – 2
FACTS - 2
COUNT 1 - USE OF THE DOMAIN NAME IS LAWFUL – 8
COUNT 2 - MATERIALLY FALSE STATEMENTS MADE TO WIPO - 8
COUNT 3 - TRADEMARK CANCELLATION – 8
PRAYER FOR RELIEF – 8

**TABLE OF AUTHORITIES**

ICANN Uniform Domain-Name Dispute Resolution Policy (UDRP) – 1, 5, 7
28 U.S.C. §§ 1331, 1338 and 2201 – 2
15 U.S.C. § 1121 - 2
15 U.S.C. § 1114(2)(D)(iv-v) – 2, 6, 7, 9
15 U.S.C. §§ 1064 and 1119 – 2, 9
NJ Long Arm Statue [NJ Rev Stat § 2A:4-30.68 (2014)] – 2
28 U.S.C. § 1391(b) and (c)(2) – 2
*SMITH v. DIRECTOR'S CHOICE, LLP*, No. 1:2015cv00081 – 5
Anti-Cybersquatting Protection Act (ACPA) – 6, 8, 7
Lanham Act - 8
15 U.S.C. § 1117(d) – 9

*Russ Smith, Pro Se, PO Box 597, Moorestown, NJ 08057  856-581-0704  dc@foi.com*

**TABLE OF EXHIBITS**

EXHIBIT A – Arbitration Complaint filed by Archimede – 1
EXHIBIT B – Amended Arbitration Complaint with Annexes filed by Archimede – 1
EXHIBIT C – Universal Domain-Name Dispute-Resolution policy ("UDRP") - 1, 2
EXHIBIT D- Europrivacy GDPR consulting not associated with Archimedes – 3, 7
EXHIBIT E - Europrivacy GDPR software not associated with Archimedes - 3
EXHIBIT F - Europrivacy GDPR software not associated with Archimedes - 3
EXHIBIT G- Europrivacy Twitter Account offering GDPR info not associated with Archimedes - 3
EXHIBIT H– Europrivacy Reddit discussion not associated with Archimedes - 3
EXHIBIT I– Registrar data for <EUROPRIVACY.COM> showing it is locked – 4
EXHIBIT J - WIPO rules involving domain "lock" - 4
EXHIBIT K – Email from Smith to Arvhimede July 27, 2018 – 4, 6
EXHIBIT L - Email from Smith to Arvhimede and WIPO July 30, 2018 – 4, 6
EXHIBIT M – UDRP Rules – 7
EXHIBIT N - USPTO Trademark registration for EUROPRIVACY – 7
EXHIBIT O - NJ Business and Alternate Name registration for Freedom of Information, LLC - 8

Plaintiff Russ Smith ("Smith") for its Complaint against Defendant Archimede Solutions Société à Responsabilité Limitée (SARL) ("Archimede") alleges as follows:

## THE PARTIES

1. Plaintiff Smith is a resident of New Jersey at PO Box 597, Moorestown, NJ 08057.

2. Defendant Archimede is a Swiss company at 15 Rue de Fort Barreau, 1201 Genève SWITZERLAND (Exhibit A, p. 4, Exhibit B, p. 3). Based on their US trademark registration another address is Rue de la Faucille 3 CH-1201 Genève SWITZERLAND.

3. Archimede has requested proceedings be held in English (Exhibit A, p. 5).

4. An affidavit of Russ Smith ("Smith Affidavit") is attached to this Complaint.

## THE DISPUTE

5. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

6. This dispute involves the registration and use of the Internet domain name <EUROPRIVACY.COM> ("Domain Name") that was registered by Smith on behalf of a business he operated. It was registered by Smith almost 19 years ago on December 7, 1999 and was used to provide information about privacy issues in Europe (Smith Affidavit ¶¶ 1-4).

7. Archimede filed an arbitration complaint ("Complaint") (Exhibit A) and later filed an amended complaint ("Amended Complaint") (Exhibit B) under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP") (Exhibit C) with the World Intellectual Property Organization ("WIPO").

8. Archimede claimed Smith acted with a bad faith intent to profit from their claimed trademark. Specifically, Archimede claimed Smith's registration of the Domain Name in 1999 was somehow "bad faith" with respect to Archimede's claimed trademark which they admit ***they didn't start using until 2015.***

9. Smith asserts he has used the Domain Name lawfully, Archimede doesn't actually have

1

*Russ Smith, Pro Se, PO Box 597, Moorestown, NJ 08057 856-581-0704  dc@foi.com*

a trademark, and Archimede engaged in Reverse Domain Name Hijacking ("RDNH").

## JURISDICTION AND VENUE

10. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

11. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1338 and 2201 and 15 U.S.C. § 1121 because this action involves a federal question arising under 15 U.S.C. § 1114(2)(D)(iv-v) and 15 U.S.C. §§ 1064 and 1119.

12. The Court has personal jurisdiction over Archimedes pursuant to the NJ Long Arm Statue [NJ Rev Stat § 2A:4-30.68 (2014)] as a result of Archimede filing the Complaint that specifically contemplates court action [Exhibit C, Section 4(k)].

13. Venue is proper under 28 U.S.C. § 1391(b) and § 1391(c)(2). Venue for this action is proper under 28 U.S.C. § 1391 in the United States District Court for the District of New Jersey at Camden because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims alleged herein occurred, because Archimede emailed Exhibit B to Smith that contained the Amended Complaint.

14. Archimede also agreed to submit to jurisdiction at the location of Smith by filing the Complaint with WIPO in spite of their failure to explicitly state that in their Amended Complaint.

## RELATED LITIGATION

15. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

16. The Complaint is attached in Exhibit A and the Amended Complaint in Exhibit B.

## FACTS

17. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

18. Smith has operated a number of Internet businesses since 1997 and these businesses developed web sites about a number of different subjects concerning Internet privacy and security such

as <Privacy.net>, <PrivacyPolicy.com>, <Anti-Virus.com>, <CookieDemo.com>, <PrivaySig.com>, <Network-Tools.com>, etc. (Smith Affidavit ¶¶ 1-4).

19. Smith holds a professional certification as a Certified Information Systems Security Professional (CISSP) since 2001 and is a retired federal employee. (Smith Affidavit ¶¶ 5-6).

20. Smith's web sites displayed advertisements as a source of income and have displayed over 500 million ads since 1998. These business entities also buy, sell, and trade web sites and domain names in the normal course of business (Smith Affidavit ¶¶ 7-8).

21. On information and belief Archimede operates a certification program which they began in 2015 called "EuroPrivacy."

22. On information and belief Archimede oversees a "Board of Experts" that contains several legal experts who specialize in Internet issues, security, and privacy.

23. On information and belief Archimede registered <europrivacy.org> to provide their "EuroPrivacy" services.

24. On information and belief Archimede knew the Domain Name was already registered to someone else when they began using <europrivacy.org>.

25. On information and belief Archimede created confusion and a security issue by calling its services "EuroPrivacy" without controlling the ".com" domain name.

26. On information and belief Archimede knew several other entities offered services similar to Archimede's services who also called their services "EuroPrivacy" (Exhibits D – H).

27. On information and belief Archimede does not actually have any trademark rights "EUROPRIVACY."

28. On information and belief Archimede has registered hundreds of domain names, many of which do not resolve to individual web sites.

29. On information and belief Archimede accused Smith of bad faith because the Domain Name did not resolve to a web site.

30. On information and belief Archimede caused the Domain Name to be "locked" (Exhibit I) under WIPO Rules (Exhibit J).

31. When Smith received notice of the Complaint he contacted Archimede and provided them substantial evidence of his involvement with privacy issues. Smith also explained that in order to file an arbitration Complaint Archimede was required Smith registered the Domain Name with the intent of profiting from Archimede's claimed trademark. Smith further explained that would be impossible since Smith registered the Domain Name in 1999 and Archimede purports to have started using their claimed trademark in 2015. (Exhibits K, L).

32. On information and belief Archimede then launched an investigation into Smith and filed an Amended Complaint.

33. On information and belief in their Amended Complaint Archimede used the information they gathered about Smith while ignoring all of Smith's references to his privacy-related activities.

34. Archimede then claimed to WIPO: "***The [Domain Name] has no relationship whatsoever to any activities previously and currently performed by [Smith].***"

35. On information and belief Archimede provided bogus evidence to WIPO to try to falsely claim Smith acted in bad faith with respect to their claimed trademark.

36. On information and belief Archimede made additional materially false statements to WIPO in an attempt to have the Domain Name, which they admit is worth thousands of dollars, transferred to themselves at no cost.

37. On information and belief, when filing the Amended Complaint Archimede knew, or should have known:

4

(a) The Domain Name was registered in 1999,

(b) Smith operated The <privacy.net> web site since the late 1990's and provided goods and services about privacy over many years,

(c) Smith testified at public hearing and workshops with the US Federal Trade Commission, Department of Commerce, and other US federal government agencies about privacy,

(d) Smith and Smith's web site appeared in media stories about privacy around the time of registration of the Domain Name in 1999,

(e) Smith operated a web development business that developed hundreds of domain names over a 20 year period, and

(f) Smith had filed suit in case *Smith v. Director's Choice, LLP*, No. 1:2015cv00081 and there is a substantial record of Smith's activities on the US federal court docket.

38. In spite of these facts Archimede filed the Complaint that made, *inter alia*, the following false and frivolous claims to WIPO:

*(a) The dispute is properly **withing the scope of the [UDRP]**,*

*(b) [Archideme] **has to** use the domain name with a TLD that is principally designed for organizations (.org.),*

*(c) This **may** harm both [Archideme] and the Internet users, by misleading them or by giving them the impression that the service is neither active nor available,*

*(d) EuroPrivacy as a brand used for certification activities **could be harmed** if the [Domain Name] was used in a way that **could create confusion**,*

*(e) According to ISO rules, **there is a duty to protect marks of conformity used in certification against any misleading communication**,*

*(f) The [Domain Name] starts with the prefix "euro" which constitutes a clear reference to European territory and **reduces the likability** [sic] that such domain name be used by a Respondent based in the US. There **would even be a risk of misleading Internet user** [sic] if this domain name was used for a non-European based commercial activity or service,*

*(g) **There is not any evidence of the Respondent's use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a***

*bona fide offering of goods or services,*

(h) ***The [Domain Name] has no relationship whatsoever to any activities previously and currently performed by [Smith].***

(i) *At a certain time, it was proposed for sales at a high price. Since then the domain name has not been used and **seems to be kept for reselling purpose**.*

(j) *The name of [Smith] was not directly visible in the domain name record. First Name: Domain, Last Name: Administrator, Organization Name: foi.com". It is to be noticed that **hiding the details of a domain name owner is considered as one of the 9 criteria recognized by ACPA** (the Anti-cybersquatting Consumer Protection Act; U.S. law enacted in 1999) as an indicator of bad faith,*

(k) *Archimede certifies that the information contained in this Complaint is to the best of the Archimede's knowledge **complete and accurate, that this Complaint is not being presented for any improper purpose**, such as to harass, and that the assertions in this Complaint are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.* [Emphasis added]

39. Upon receiving notice of the Complaint Smith contacted Archimede via email (*Ibid*) and telephone. Smith explained that:

(a) He operated privacy oriented web sites since the late 1990's,
(b) He participated in "Safe Harbor" discussions with the US Department of Commerce which involves the transfer of customer information between Europe and the United States,
(c) That it is not possible for Smith to have engaged in a bad faith registration of the Domain Name in 1999 with respect to Archimede's trademark registration with a first use date of 2015,
(d) Archimede was required to submit to mutual jurisdiction to at least one of the principal office of the Registrar or the domain-name holder's address, and
(e) He planned to sue Archimede pursuant to 15 U.S.C. § 1114 (2)(D)(iv-v) if they did not withdrawal the Complaint.

40. On information and belief in an attempt to avoid a court review Archimede only agreed to submit to jurisdiction to the registrar location in Canada. The Rules related to the UDRP requires Archimede to agree to "at least one specified [location of] Mutual Jurisdiction." [Exhibit M, Section 3(xiii)]. Archimede chose the location themselves to be in Canada and they did not agree to "at least one specified [location]" as required. Court review is mandated in the UDRP [Exhibit D, Section 4(k)] but Canadian law would be completely irrelevant to any possible dispute between the parties.

41. On information and belief Archimede obtained a US trademark registration for "EUROPRIVACY" (Registration No. 5243297) (Exhibit N) in spite of "EUROPRIVACY" being descriptive and not eligible for trademark registration.

42. On information and belief Archimede obtained a US trademark registration for "EUROPRIVACY" (Registration No. 5243297) (Exhibit N) in spite of several other entities offering the same or similar services using the name "EUROPRIVACY."

43. On information and belief Archimede obtained a US trademark registration for "EUROPRIVACY" in spite of not doing business in the United States.

44. In summary:

(a) Archimede knew the Domain Name was already taken when they branded their services under the name "EUROPRIVACY,"

(b) Archimede asserts they had a responsibility to brand their services such that there would not be confusion but Archimede chose their branding knowing they did not control the Domain Name and that several other entities used the same term for similar goods and services,

(c) Archimede was aware of Smith's activities related to privacy and did not mention any of that in their Complaint and they went so far as to falsely assert "The [Domain Name] has no relationship whatsoever to any activities previously and currently performed by [Smith]" when they knew the opposite was true,

(d) Archimede tries to claim that Smith's use of his NJ-registered "doing business as" business name (Exhibit O) in the registration information is somehow an attempt to deceive and is a violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA") and

(e) Archimede claims possible confusion without have any evidence of actual confusion.

## COUNT 1 - USE OF THE DOMAIN NAME IS LAWFUL

45. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

46. Smith seeks a declaratory ruling the registration and use of the Domain Name is lawful with respect to the Lanham Act as amended by the Anti-Cybersquatting Consumer Protection Act (ACPA),

## COUNT 2 - MATERIALLY FALSE STATEMENTS MADE TO WIPO

47. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

48. Archimede made materially false statements to WIPO that cause the Domain Name to be locked.

49. Archimede engaged in Arbitration Reverse Domain Name Hijacking (RDNH) by filing a knowingly false Complaint with WIPO.

50. Archimede engaged in ACPA Reverse Domain Name Hijacking (RDNH) by making false claims that Smith violated the ACPA.

## COUNT 3 – TRADEMARK CANCELLATION

51. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

52. On information and belief Archimede improperly obtained a US trademark registration for "EUROPRIVACY" and their registration should be canceled.

## PRAYER FOR RELIEF

53. Smith hereby incorporates the allegations in the above paragraphs as if set forth here.

54. Smith prays the Court:

(a) Issue injunctive relief to remove the lock placed on the Domain Name [15 U.S.C. § 1114 (2)(D)(iv -v)],

(b) Issue a declaration that Smith's use of the Domain Name is "not unlawful." [15 U.S.C. § 1114 (2)(D)(v)]

(c) Issue a declaration that the Archimede made materially false statements that caused the Domain Name to be locked [15 U.S.C. § 1114 (2)(D)(iv)],

(d) Award actual damages to Smith [15 U.S.C. § 1114 (2)(D)(iv)],

(e) Award punitive and/or statutory damages [15 U.S.C. § 1117(d)] to Smith of $100,000.

(f) Cancel Archimede's trademark Registration (No. 5243297) [15 U.S.C. §§ 1064 and 1119] at the US Patent and Trademark Office, and

(g) Other relief as the Court deems just and proper.

Respectfully submitted,

_Russ Smith_
Russ Smith, *Pro Se*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. _____

Russ Smith,
Plaintiff,
v.
Archimede Solutions Société à Responsabilité Limitée (SARL),
Defendant

## Affidavit of Russ Smith
## In Support of
## COMPLAINT

1. I am the plaintiff in the above-captioned case an my address is PO Box 597, Moorestown, NJ 08057.

2. I registered <EUROPRIVACY.COM> December 7, 1999.

3. I used <EUROPRIVACY.COM> to provide information about privacy issues in Europe.

4. I have operated a number of Internet businesses since 1997 and these businesses developed web sites about a number of different subjects concerning Internet privacy and security and those web sites have attracted millions of visitors.

5. I hold a professional certification as a Certified Information Systems Security Professional (CISSP) since 2001.

6. I am a retired federal employee.

7. My web sites displayed advertisements as a source of income and have displayed over 500 million ads since 1998.

8. My business entities buy, sell, and trade web sites and domain names in the normal course of business.

The attached exhits are true copies as described:

EXHIBIT A – Arbitration Complaint filed by Archimede

EXHIBIT B – Amended Arbitration Complaint with Annexes filed by Archimede
EXHIBIT C – Universal Domain-Name Dispute-Resolution policy ("UDRP")
EXHIBIT D- Europrivacy GDPR consulting not associated with Archimedes
EXHIBIT E - Europrivacy GDPR software not associated with Archimedes
EXHIBIT F - Europrivacy GDPR software not associated with Archimedes
EXHIBIT G- Europrivacy Twitter Account offering GDPR info not associated with Archimede
EXHIBIT H– Europrivacy Reddit discussion not associated with Archimedes
EXHIBIT I– Registrar data for <EUROPRIVACY.COM> showing it is locked
EXHIBIT J - WIPO rules involving domain "lock"
EXHIBIT K – Email from Smith to Arvhimede July 27, 2018
EXHIBIT L - Email from Smith to Arvhimede and WIPO July 30, 2018
EXHIBIT M – UDRP Rules
EXHIBIT N - USPTO Trademark registration for EUROPRIVACY
EXHIBIT O - NJ Business and Alternate Name registration for Freedom of Information, LLC

_____  _8/7/2018_
Russ Smith                  Date

STATE OF New Jersey COUNTY OF Burlington

I, the undersigned Notary Public, do hereby affirm that Russell Smith personally appeared before me on and signed the above Statement as his free and voluntary act and deed.

_____
Notary Public

AMBER L SCOTT
Notary Public
State of New Jersey
My Commission Expires Nov 4, 2020

2
Russ Smith, Pro Se, PO Box 597, Moorestown, NJ 08057 856-581-0704 dc@foi.com